PER CURIAM.
This appeal seeks review of the judgment of the trial court holding that sections 231.-533 and 231.534, Florida Statutes (Supp. 1984) and rule 6A-4.46, Florida Administrative Code do not contravene article I, section 6, Florida Constitution. The decision of the trial court follows:
Plaintiff, a labor organization representing instructional and other personnel employed by the District School Board of Dade County, Florida, seeks a judicial declaration that Secs. 231.533 and 231.-534 and Rule 6 A-4.46 of the Florida Administrative Code on their face contravene Article I, Sec. 6 of the Florida Constitution. At the hearing held on Plaintiff’s Motion for Judgment on the Pleadings, the parties represented that the constitutional issue raised in the complaint and answer was purely a matter of law and ripe for determination without the taking of testimony. Being of similar mind, the Court concludes that a judicial declaration in the premises is appropriate and that Plaintiff has stated an entitlement to such a declaration albeit, one that may not be to its liking.
*1270 The challenged statutory sections and the implementing rule speak to what has come to be known as the Master Teacher Program. Simply stated, this program would confer a three-thousand dollar grant/award on selected superior teachers who voluntarily satisfy certain statutory criteria. This amount is payable directly from the State Comptroller to the teacher twice each year in increments of fifteen-hundred dollars. Plaintiff asserts that such a program, bypassing as it does the collective bargaining process guaranteed public employees under Article I, Sec. 6 of the Florida Constitution and implemented under the provisions of Chapter 447, F.S., amounts to an abridgment of the right of those employees to bargain collectively.
The Master Teacher Program was enacted by the Legislature for the stated purpose of recognizing “superior ability among Florida’s instructional personnel and to provide an economic incentive to such personnel to continue in public school instruction.” Sec. 231.533, F.S. Subsection (5) of that section mandated the adoption by the State Board of Education of the implementing rule challenged in this litigation.
There can be little doubt that the Florida Legislature has the predominant role in Florida’s scheme of public education. It must make “adequate provision by law” — “as the needs of the people may require” and appropriate funds for the “support and maintenance of free public schools.” Article IX, Secs. 1 and 6. Statewide supervisory authority over public education by the Governor and Cabinet sitting as the State Board of Education is provided for in Sec. 2 of Article IX. Finally, local control over Florida’s public schools is constitutionally reposed into several district school boards. Article IX, Sec. 4.
It is axiomatic that the Legislature and the State Board of Education, the latter acting at the direction of the former, subject only to constitutional limitation, have the constitutionally mandated authority, indeed the responsibility, to unilaterally establish, in the public interest, uniform statewide standards of quality for Florida’s public school system. Thus, it is that Article I, Sec. 6 must co-exist with Article IX and all other constitutional provisions. All must be given affect [sic] to the extent possible under the doctrine of separation of powers.
Turning to the limited constitutional issue raised here, it seems clear that the Master Teacher Plan does not abridge the right of public employees to bargain collectively.
Plaintiff argues that a voluntary grant/award program of the type contemplated here is, regardless of its nomenclature, “wages” subject to the collective bargaining process. It contends that the Legislature's bypassing of that process and making these awards directly to teachers amounts to nothing more than “union busting”.
One normally thinks of wages as flowing from the employer-employee relationship. However, the recognitional award under attack in this litigation springs from a determination by a stranger to the employment relationship that perceived excellence in public school teaching should be monetarily rewarded. Coming as it does from a non-employer, it seems to the Court that it would be an unreasonable and unwarranted extension of Florida’s public sector labor act to characterize this grant award as “wages” for purposes of collective bargaining. Even assuming arguendo that these awards are “wages”, the duty to bargain attaches to the public employer which under the public labor act is defined to be the District School Board with respect to district level instructional personnel. As to these public employees, there is no state level employer. Given the present language of the Florida Public Labor Act neither the State Board of Education or the Department of Education is a public employer and hence, there is no duty on the part of either of those entities to bargain statewide poli- *1271 eies with representatives of the employees of a local school board.
The practical effect of holding a grant award program unconstitutional as viola-tive of Article I, See. 6 of the Florida Constitution leads one inescapably to the conclusion the uniform statewide educational standards which one might argue are local terms and conditions of employment could only be established through some type of statewide bargaining. Accordingly, many of the existing statewide programs could be called into question-. This Court is unable to find anything in Florida’s Public Labor Act which envisions a species of bargaining designed to negotiate statewide instructional standards between the state and local instructional employees acting through their public sector labor organization. Conversely, there is nothing that requires statewide standards to be locally negotiated. Local district school boards and the representatives of their instructional personnel have no statewide authority to impose statewide standards, similar to the one that is the subject of this litigation. To effectuate a policy of statewide bargaining requires clear legislative intent and the means to implement such a policy. The Court is of the view that existing law does not contemplate such a policy. If such should be deemed to be desirable and appropriate it would require substantial amendments to the public sector labor law as well as the school code.
Accordingly, the premises considered, the Court finds as follow:
1. The challenged statutory sections and the State Board of Education rule challenged in this litigation do not violate Article I, Sec. 6 of the Florida Constitution.
2. Whether the Master Teacher Plan violates other constitutional provisions was neither raised in the pleadings nor considered or decided in this Order.
We affirm the decision of the trial court and certify to the Supreme Court of Florida the following question as one of great public importance:
IS FLORIDA’S MASTER TEACHER PROGRAM (FLORIDA STATUTES SECTIONS 231.533 AND .534 (SUPP.1984)) AN ABRIDGMENT OF THE CONSTITUTIONALLY GUARANTEED RIGHT TO COLLECTIVE BARGAINING?
BOOTH, C.J., and WIGGINTON and BARFIELD, JJ., concur.